373 So.2d 149 (1979)
STATE of Louisiana
v.
Jackie Dennise DANIEL and Denise Bess Daniel.
No. 63672.
Supreme Court of Louisiana.
June 25, 1979.
Keith M. Whipple, Whipple, Boquet & Freeman, Houma, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., Alexander L. Doyle, Asst. Dist. Atty., for plaintiff-respondent.
SUMMERS, Chief Justice.
The question presented on this appeal is the sufficiency of an affidavit of a sheriff's narcotic officer to support the issuance of a search warrant.
Defendants were arrested and charged with possession with intent to distribute controlled dangerous substances. La.Rev. Stat. 40:967, 968 and 969. A motion to suppress evidence seized in their residence at 12:42 in the morning on November 23, 1977 was filed and heard prior to trial. When the trial judge denied the motion, defendants applied here for review. Certiorari was granted.
For three days defendant Jackie Daniel, house supervisor at the Terrebonne General Hospital, had been under surveillance as a suspected thief of controlled dangerous drugs from the pharmacy at the hospital. On the evening of November 22, 1978 an officer of the Sheriff's Department requested that the assistant supervisor of the pharmacy *150 make an inventory of drugs in the pharmacy. This was accomplished by 8 o'clock that night. By 9 o'clock that night the Sheriff's officer set up a surveillance at the pharmacy. As he had on previous nights, Daniel entered the pharmacy shortly after 10 o'clock. Several minutes later he emerged and disappeared to other parts of the hospital. At 11:20 Daniel left the hospital. After his departure the assistant supervisor reentered the pharmacy and after inspection reported a quantity of drugs were missing.
Anticipating that the investigation in progress would establish Daniel's activity to be criminal the Sheriff had requested that a district court judge be available to sign a search warrant that evening. When the police observed Daniel load several boxes he had taken from the pharmacy into his car before leaving the hospital, they notified the Sheriff's Office where the district judge waited.
Another agent of the Sheriff's office was staked out at defendant's residence 1350 Tunnel Boulevard, Apartment 22D. When defendants arrived and entered the house the agent advised the sheriff's office of the fact by radio. This transmission was overheard by the judge who then signed the search warrant. It was then 12:10 a. m. At 12:42 that morning several officers of the Sheriff's Department entered Daniel's house, arrested him and his wife and seized a quantity of controlled dangerous drugs.
The affidavit which had been prepared to support the issuance of the search warrant recited:
"The following facts having been sworn to by affiant in support of the issuance of this warrant:
"Affiant received information from Mr. Blake Pitre in reference to unusual activity by Terrebonne General Hospital house supervisor, Jack Daniel. Mr. Pitre told affiant that on 11-20-78 at approximately 10:25 p. m., he (Mr. Pitre) observed subject Daniel enter the hospital pharmacy (after closing hours) and immediately leave the building and go to a vehicle located in the hospital parking lot, open the vehicle (Florida license BVM331) and put something into the vehicle.
"Mr. Pitre also observed the subject at approximately 10:45 p. m. on the same date enter the pharmacy again, exit and enter ICU. Mr. Pitre also on 11-21-78 observed Daniel enter the pharmacy at approximately 10:15 p. m., exit the pharmacy, leave the building and again go to the same vehicle and deposit something into the vehicle for the second time.
"Affiant spoke to Mr. B. Belaire Bourg, Jr., assistant pharmacy supervisor in which an inventory was conducted of the drugs contained within the pharmacy as of approximately 8:00 p. m. 11-22-78.
"At approximately 9:00 p. m., affiant and Agt P. Olivier set up surveillance on the pharmacy, and at approximately 10:16 p. m. affiant observed subject Daniel enter the pharmacy and observed Daniel exit the pharmacy at approximately 10:20 p. m. Daniel did not leave the hospital until approximately 11:20 p. m.
"Affiant and Mr. Bourg then entered the pharmacy after Daniel had left the hospital and it was confirmed by Mr. Bourg that 1 box of 10 Meperidina 100mg XXXX each Tubex (Wyeth) bearing number NDC008-0259-02 and 1 30cc vial Meperidine Injection, 50mg/cc (Wyeth) bearing number NDC0008-0258-01, were missing from the pharmacy inventory and unaccounted for."
Although the affidavit was incorporated into the search warrant, there is no reference to the fact that the defendant left the hospital and appeared to deposit the stolen drugs in his apartment. However, the warrant does authorize the search of defendant's residence, being "the following described place: 1350 West Tunnel Blvd., Apt. 22D, apartment complex also shown as Westwood Apartments." According to the sworn testimony of the officers at the suppression hearing, the residence address of defendants was known to the investigating officers who had obtained the information from the hospital and thereafter confirmed the fact with the Westwood Apartment security guard. The judge who signed the *151 search warrant also testified at the hearing and verified his role in the case.
This State's Constitution protects the security of every person in his person, property, communications, houses, papers and effects against unreasonable searches, seizures, or invasions of privacy. The Constitution declares that, "No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the person or things to be seized, and the lawful purpose or reason for the search." La.Const. art. I, § 5.
Article 162 of the Code of Criminal Procedure restates these constitutional principles, particularizing the requirement that a search warrant may issue only on probable cause established to the satisfaction of the judge, "by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant."
Obviously, therefore, the affidavit before us does not support the issuance of a warrant to search defendants' apartment at 1350 Tunnel Boulevard if the showing of probable cause is to be limited to the four corners of the affidavit. For nowhere in the affidavit is it mentioned that the drugs were delivered to the "place to be searched," the apartment of defendants; nor does the affidavit set forth that defendants lived at that address.
The question then is whether the affidavit can be supplemented, or rehabilitated as it were, by testimony of the affiant and of the issuing magistrate. As the recital of events of the night makes clear, these two witnesses were aware of facts not contained in the affidavit which would supply the information needed to establish probable cause if the information had been contained in the affidavit. Principally, they were aware of the address of these defendants and of the fact that they entered that apartment with the drugs obtained from the pharmacy about thirty minutes beforeall information obtained before the issuance or execution of the search warrant.
And, while the place to be searched was shown in the search warrant, a single document containing on its face the requisite words for a search warrant and also the affidavit purporting to support its issuance, there is no recorded information showing a connexity between the place to be searched and the drugs obtained by defendants from the pharmacy. Only the testimony of the magistrate and the officer who signed the affidavit supply this essential element of probable cause.
In 1969 in State v. Wells, 253 La. 926, 221 So.2d 50, this Court took the position that the "clear and unmistakeable language of Article 162 requires ..." that the essential facts for establishing probable cause to issue a search warrant "be contained in the affidavit." The proposition has received approval of this Court on a number of occasions. State v. Koncir et al., 367 So.2d 365 (La.1979); State v. Turnipseed, 362 So.2d 486 (La.1978); State v. Richards, 357 So.2d 1128 (La.1978); State v. Loehr, 355 So.2d 925 (La.1978); State v. Chaffin, 324 So.2d 369 (La.1975); State v. Paciera, 290 So.2d 681 (La.1974); State v. Linkletter, 286 So.2d 321 (La.1973) Summers, J., dissenting; State v. Holmes, 254 La. 501, 225 So.2d 1 (1969).
Because these repeated holdings require that all essential facts to support the issuance of the search warrant must be contained in the affidavit submitted to the magistrate, this search warrant cannot fulfill these requirements, and the evidence obtained on that authority must be suppressed.
For the reasons assigned, the ruling of the trial judge denying the motion to suppress is reversed, and the case is remanded to be proceeded with in a manner not inconsistent with this opinion.